{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which terminated parental rights and awarded permanent custody of Alizah W.[1], a/k/a Baby Girl W., the child of appellant Roberta C. and appellant Kevin W., to appellee Lucas County Children Services Board ("LCCS"). For the reasons stated herein, this court affirms the judgment of the trial court.
 {¶ 2} The following facts are relevant to this appeal. On March 1, 2002, this court affirmed[2] the trial court's termination of parental rights and award of permanent custody of seven of Roberta C.'s children to LCCS; Kevin W. was the father of the youngest of these children. Legal custody of an eighth child, Roberta C.'s oldest child, was awarded to the child's maternal grandmother. The father of the other children was accused of sexually molesting his two oldest daughters and was convicted and incarcerated on multiple counts of sexual assault. The initial complaint[3] alleged that Roberta C., although aware of these allegations, permitted the children to stay with their father. In addition, the complaint alleged that Roberta C. and Kevin W., who shared a household, were involved in incidents of domestic violence which were viewed by the children. A subsequent amendment to the complaint alleged that the children were educationally and medically neglected.
 {¶ 3} This appeal involves Alizah W. born on August 1, 2001. On August 2, 2001, LCCS filed a complaint in dependency, neglect and abuse, as well as a complaint in original permanent custody, reasonable efforts bypass and a motion for a shelter care hearing. Through an ex-parte order, the magistrate granted shelter care custody of Alizah W. to LCCS. On August 13, 2001, a guardian ad litem ("GAL") was appointed for the child. On August 14, 2001, counsel was appointed for Roberta C. On August 30, 2001, counsel was appointed for Kevin W.
 {¶ 4} The GAL submitted her report and recommendation on August 31, 2001, and recommended that permanent custody be awarded to LCCS. On September 5, 2001, a reasonable efforts bypass hearing was held. Following the hearing, the magistrate denied the reasonable efforts bypass. On September 24, 2001, Roberta C. filed a motion to stay proceedings pending a decision from this court in regard to the other children. On September 26, 2001, Kevin W. filed a motion in support of Roberta C.'s motion. These motions were granted at a hearing on October 1, 2001.
 {¶ 5} On October 5, 2001, LCCS filed objections to the magistrate's decision regarding the reasonable efforts bypass. A hearing on these objections was held on April 25, 2002, following this court's March 1, 2002 affirmance. The trial court sustained the objections. A hearing on permanent custody was set. Counsel for Roberta C. filed a motion to withdraw as counsel of record, noting that Roberta C. refused to accept his advice, that she believed that he was not representing her interests and that she had requested the court appoint another attorney as she thought this attorney was incompetent. The trial court granted the motion to withdraw and appointed another attorney.
 {¶ 6} The adjudication was held on August 2, 2001. After the trial court found the child to be dependent, the disposition was held. The trial court granted the request for permanent custody. This appeal followed.
 {¶ 7} Appellants set forth the following "STATEMENT OF QUESTION PRESENTED" which we shall construe as their assignment of error:
 {¶ 8} "I. That The Juvenile Court Erred In That The Evidence Lacked The Clear And Convincing Standard That Roberta C[.], Mother And Kevin W[.], Father Have Not Shown Substantial Improvement And Would Not Be Able To Adequately Parent In The Near Future As Required By O.R.C.2151.414."
 {¶ 9} At the adjudication, Ryan Parker, the LCCS ongoing caseworker for the family testified that he had been involved with the family for four years. Parker testified that after two years of unsuccessful progress on the case plan, LCCS filed for permanent custody. The initial issues involved were domestic violence, educational, environmental and medical neglect, physical abuse and allegations of sexual abuse, the later with the father of Roberta C.'s other children. Parker testified that appellants had not successfully dealt with these issues. Accordingly, when the present case was filed, the goal of the case plan was permanent custody and LCCS did not offer any services to appellants. Parker further testified that because of two years of unsuccessful progress on the case plan, the baby would be in danger of being abused or neglected if returned to the parents. The trial court found Alizah to be dependent and the final disposition was held.
 {¶ 10} Parker again testified. He testified that when Alizah was born, a case plan was in place in regard to this family so she was added to that case plan. The services offered were domestic violence, anger management, individual counseling, parenting, family counseling and a community advocate from Children Services regarding parenting issues and budgeting. In regard to the family interaction, Parker testified that when he observed the family, there was a lack of control of the children, fighting and cursing. He did not see any progress in the family during the parenting classes and family counseling. Parker testified that domestic violence continued between the parents. Parker also testified that there was no improvement in parenting skills and home conditions after work with the community advocate.
 {¶ 11} Parker testified further that Alizah had been placed with the paternal grandparents who had custody of Alex, youngest of the eight children previously removed. Parker testified that Alizah had adjusted well to this relative placement. Parker recommended that permanent custody be awarded to LCCS so that Alizah could be adopted by the paternal grandparents.
 {¶ 12} Molly W., the paternal grandmother, testified that the domestic violence between the parents has continued and that she has bailed her son out of jail for domestic violence against Roberta. Molly also testified that she was willing to adopt Alizah and that she was in the process of adopting Alex, now four years old. Molly also testified that Alizah and Alex love each other. She testified that not only had she seen the destruction of an apartment ceiling, a television and Alex's bassinet and baby swing caused by physical violence between Roberta C. and Kevin W., but also she had personally seen physical violence between them.
 {¶ 13} Douglas Jones, a licensed social worker with Connecting Point who had worked with Kevin W. for about six months, testified on his behalf. Jones testified that he worked with Kevin W. in regard to his anger and anger management; Jones also saw Kevin W. in conjunction with Roberta C. and her counselor three or four times. Jones testified that Kevin W. did not feel he had an anger problem. Jones also testified that Kevin W. did not make any progress toward anger management because he did not feel he had an anger problem. Kevin W.'s case was closed when he continually did not keep counseling appointments.
 {¶ 14} Kevin W. testified on his own behalf. He testified that his mother, Molly W., exaggerated the domestic violence situation with more than what occurred. He stated that he did not have any anger concerns and that he is interested in taking care of Alizah. Kevin W. testified that his relationship with Roberta C. is normal in that they get into arguments and have disagreements. In regard to domestic violence charges, Kevin W. testified that in one case he was found not guilty and the other case was dismissed. He testified that he does not need any help with his anger or with his parenting. He also testified that he had a certificate from parenting classes.
 {¶ 15} Roberta C. testified on her own behalf. She testified that she completed the following on her case plan: parenting, counseling and a drug and alcohol assessment. She denied that there was any violence between her and Kevin W. She testified that she can take care of Alizah and that she would do anything to get Alizah back.
 {¶ 16} In their assignment of error, appellants contend that the trial court's findings in support of the permanent custody award were not supported by clear and convincing evidence. This court finds no merit in this assignment of error.
 {¶ 17} Pursuant to R.C. 2151.04(D), a dependent child is any child:
 {¶ 18} "To whom both of the following apply:
 {¶ 19} "(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 {¶ 20} "(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
 {¶ 21} The trial court's findings at an adjudicatory hearing are to be based on clear and convincing evidence. R.C. 2151.35(A)(1). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 22} After reviewing the record, we find that the trial judge had sufficient evidence to satisfy the requirement that the dependency finding be based on clear and convincing evidence. At the time of the adjudicatory hearing, appellants had already lost permanent custody to LCCS of at least one child of which they were the parents due to their failure to substantially comply with the requirements of the case plan. Accordingly, within the meaning of R.C. 2151.04(D), Alizah was dependent, since she was "residing in a household in which a parent * * * committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child." Alizah was also in danger of being abused or neglected "because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child."
 {¶ 23} The disposition of a child determined to be dependent, abused or neglected is controlled by R.C. 2151.353 and the court may enter any order of disposition provided for in R.C. 2151.353(A). Before the court can grant permanent custody of a child to a child services agency, the court must determine: 1) pursuant to R.C. 2151.414(E) that the child cannot or should not be placed with one of his parents within a reasonable time; and 2) pursuant to R.C. 2151.414(D), that the permanent commitment is in the best interest of the child. R.C. 2151.414(E) provides that, in determining whether or not a child can or should be placed with a parent within a reasonable time, the court shall consider all relevant evidence. If, however, the court determines by clear and convincing evidence that any one of sixteen factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time. The sixteen factors of R.C. 2151.414(E) include:
 {¶ 24} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 25} "* * *
 {¶ 26} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 27} "* * *
 {¶ 28} "(11) The parent has had parental rights involuntarily terminated pursuant to section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 29} "* * *
 {¶ 30} "(16) Any other factor the court considers relevant."
 {¶ 31} Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford, supra. In determining the best interest of the child, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including but not limited to:
 {¶ 32} "* * *
 {¶ 33} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 34} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 35} Upon a thorough review of the record in this case, we conclude that the trial court's findings that Alizah could not or should not be placed with either of her parents within a reasonable time and that permanent custody was in Alizah's best interest were supported by clear and convincing evidence. In particular, Roberta's parental rights to eight other children and Kevin's parental rights to one other child had recently been terminated. Furthermore, the trial court did not abuse its discretion in considering appellants' ongoing volatile relationship as a factor in making its determination.
 {¶ 36} Accordingly, appellants' assignment of error is found not well-taken.
 {¶ 37} On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
[1] The original pleadings in the trial court were captioned In the matter of Baby Girl C., were later captioned In the matter of Baby Girl W. and still later were captioned In the matter of Aleka Alizah W. The judgment entry from which this appeal arises, the notice of appeal and appellants' brief are all captioned In the matter of Alizah W. and, therefore, this court will refer to the child as Alizah W.
[2] In the matter of Crystal C., Tammy C., Ernest C., Billy C.,Courtney C., David C., Justin C., and Alex W., 6th Dist. No. L-01-1336, 2002 Ohio 855.
[3] The 1998 dependency, neglect and abuse complaint was filed for nine of Roberta C.'s children, including a daughter who was emancipated by the time of the 2002 appeal.